CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 2 0 2011

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
### Roanoke Division

|  |  |
|---|---|
| MELVIN L. CRAWLEY, | Civil Action No. 7:08-cv-00267 |
| *Plaintiff,* |  |
| v. | **MEMORANDUM OPINION** |
| NORFOLK SOUTHERN CORPORATION, |  |
| *Defendant.* | By: James C. Turk<br>Senior United States District Judge |

This matter comes before the Court on Defendant Norfolk Southern Corporation's ("Norfolk Southern") motion for summary judgment. *Def.'s Mot. Summ. J.*, ECF No. 29. Plaintiff Melvin L. Crawley ("Crawley") responded, *Pl.'s Resp. to Def.'s Mot. Summ. J.*, ECF No. 33, and Norfolk Southern replied, *Def.'s Reply to Pl.'s Resp.*, ECF No. 35. The Court heard oral arguments on the motion for summary judgment on May 26, 2011. The Court has taken note of both parties' objections to evidence submitted with the briefs, *Def.'s Objections*, ECF No. 36; *Pl.'s Mot. to Strike*, ECF No. 37, and the matter is now ripe for disposition. In accordance with the following Memorandum Opinion, Norfolk Southern's motion for summary judgment will be **GRANTED**.

## I.    Background

Crawley began his long and inarguably successful career at Northern Southern in June 1979 when he was hired as a Management Trainee in Roanoke, Virginia. Over the ensuing twenty years, Norfolk Southern promoted Crawley up the corporate ladder, hiring him to multiple management positions in several locations. Crawley's career reached its apogee in February 2000 when Crawley rose to the level of Division Superintendent in Birmingham,

Alabama. Norfolk Southern laterally transferred Crawley to a similar position in Roanoke, Virginia at the same pay rate where Crawley remained until late 2005. Norfolk Southern recognized his performance in Roanoke in 2004, when the Chief Executive Officer gave Crawley an award for overseeing the Norfolk Southern division with the best safety record that year. However, Crawley's relationship with Norfolk Southern soured in late 2005 because of Crawley's handling of an on-the-job injury to one of his employees.

At 11:25 a.m. on September 30, 2005, an out-of-control rail car in Norfolk Southern's Roanoke rail yard forced brakeman Marissa Bannister to jump to safety, causing cuts and abrasions to both her knees. After receiving first aid, she finished her shift. The next day at 8:52 a.m., Bannister called Assistant Terminal Superintendent D.G. Kendrick and requested the day off from work because of her injuries. Kendrick then called Crawley, who was out of town on vacation at the time, explained the situation, and asked Crawley for advice. Crawley asked Kendrick two questions: whether Bannister required medical attention, and whether Bannister wanted off work because of her injuries from the day before. Kendrick did not provide clear answers to those questions, and Crawley instructed Kendrick to refer the matter to Terminal Superintendent Bruce Cobbs so that Cobbs could handle it. Cobbs called Bannister and told her the situation could possibly open a "can of worms." Afterwards, Bannister called in "sick" rather than "injured." Kendrick then informed Crawley that Bannister had called in "sick" with "female problems." Crawley did not investigate why Bannister had changed the reasons she asked off work.

In early October of 2005, an officer for the United Transportation Union, a labor union representing Norfolk Southern yard workers, contacted Norfolk Southern with information that Federal Railroad Administration ("FRA") regulations and Norfolk Southern policies may have

been violated in connection with Bannister's injuries. Norfolk Southern immediately launched an investigation led by Executive Vice President of Operations Mark Manion. Manion questioned Crawley on October 7 about the incident. Crawley insisted throughout that he believed the sole reason for Bannister's asking off work was "female problems." At one point, Manion became frustrated and angrily harangued Crawley. At the end of the investigation, Manion concluded that Crawley mishandled the Bannister incident for failing to realize that Cobbs may have pressured Bannister into changing the reason for her asking off work from "injury" to "female illness." Manion also concluded that Crawley had been untruthful during the investigation. As a result, Manion decided that Crawley should no longer serve in a high-ranking supervisory capacity. Norfolk Southern immediately demoted Crawley from his Division Superintendent position in Roanoke to a Terminal Superintendent position in Columbus, Ohio. While this move demoted Crawley from a grade "B7" position to a grade "B5" position, Crawley received his salary and benefits at grade "B6", a 3.48% pay decrease. On January 16, 2006, Crawley timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging racial discrimination.

In the years preceding and following this demotion, Norfolk Southern did not promote Crawley to numerous positions in which he expressed interest, including several Vice President, Assistant Vice President, General Manager, and Assistant General Manager positions. Norfolk Southern instead awarded these positions to Caucasians. In many instances, Norfolk Southern did not notify Crawley of openings in these positions in which he might have been interested.

In 2005 and 2006, Norfolk Southern awarded Crawley a 4.02 percent merit-based pay increase. In 2007, Norfolk Southern awarded Crawley a four percent merit-based pay increase. In 2008, Norfolk Southern awarded Crawley a 1.22 percent merit-based pay increase plus an

additional lump sum payment. Norfolk Southern froze salaries company-wide in 2009 in response to a general economic contraction. In 2010, Norfolk Southern awarded Crawley a 1.22 percent merit-based pay increase.

## II.    Procedural History

Crawley initially filed this suit on April 27, 2007 in the United States District Court for the Middle District of Pennsylvania, Scranton Division. *Compl.*, Apr. 27, 2007, ECF No.1. The case was then transferred to the Western District of Virginia, Roanoke Division, on April 2, 2008. Crawley seeks relief for emotional and economic harm resulting from alleged racial discrimination and retaliation by Norfolk Southern. *Id.* at 1. Crawley alleges that Norfolk Southern discriminated against him because he is Africa-American in violation of Title VII of the Civil Rights Act of 1964, 42 USC § 2000e *et seq.* (Count One), and the Civil Rights Act of 1866, *as amended,* 42 U.S.C. § 1981 (Count Two). *Id.* In addition, Crawley alleges that Norfolk Southern failed to promote or compensate him properly in retaliation for filing a Discrimination Charge with the Equal Employment Opportunity Commission ("EEOC") in violation of the Civil Rights Act of 1866, *as amended*, 42 U.S.C. § 1981 (Count Three). *Id.* Plaintiff seeks declaratory and injunctive relief; back pay; front pay; placement into a higher-paying position than he would hold but for Defendant's discrimination; compensatory, nominal, and punitive damages; and attorney's fees. *Id.* at 1–2.

## III.    Standard of Review

Summary judgment is proper where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when a rational factfinder, considering the evidence in the summary judgment record, could find in favor of the non-moving party. *Ricci v. DeStefano*, 129 S.Ct.

2658, 2677 (2009). Summary judgment should be entered if the Court finds, after a scrupulous review of the record, that no reasonable jury could return a verdict for the non-moving party. *See Evans v. Technologies Applications & Service Co.*, 80 F.3d 954 (4th Cir. 1996).

In considering a motion for summary judgment, a court must consider the facts and draw all reasonable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also MLC Automotive, LLC, v. Town of Southern Pines*, 532 F.3d 269, 273 (4th Cir. 2008). A summary judgment motion should not be granted "unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and established affirmatively that the adverse party cannot prevail under any circumstance." *Campbell v. Hewitt, Coleman, & Assocs., Inc.*, 21 F.3d 52, 55 (4th Cir. 1994). The moving party bears the burden to establish either the absence of a genuine issue of material fact or the absence of evidence to support the non-moving party's case. *MLC Automotive*, 532 F.3d at 281.

## IV. Analysis

Crawley's claims can essentially be organized into four broad categories: 1) demotion discrimination, 2) promotion discrimination, 3) salary discrimination, and 4) retaliation. Crawley first claims that Norfolk Southern demoted Crawley in October of 2005 because he was black. Crawley next claims that Norfolk Southern did not promote Crawley on numerous occasions from 2005 through the present because he is black. Crawley also claims that Norfolk Southern would have paid Crawley more if he were not black. Lastly, Crawley alleges that Norfolk Southern retaliated against him for filing an EEOC discrimination complaint by not promoting him to several positions. As explained below, no reasonable jury could find that

Norfolk Southern demoted, did not promote, or unfairly paid Crawley because of his race. Norfolk Southern is thus entitled to judgment as a matter of law.

### a. Demotion Discrimination Claim

Crawley asserts that Norfolk Southern "unfairly and illegally" demoted him from his grade B7 position of Superintendent Virginia Division to a grade B5 position, Superintendent Columbus Terminal on November 1, 2005. Crawley alleges that Norfolk Southern demoted him because he was black while Norfolk Southern claims it demoted Crawley for mishandling the Bannister injury. Crawley has adduced no direct evidence at this stage showing that Norfolk Southern discriminated against him because of his race. Accordingly, the Court will evaluate his claims under the indirect proof method governed by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973).

To establish a prima facie case of disparate treatment under Title VII of the Civil Rights Act of 1964, a plaintiff must show that (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (*en banc*) (citing *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 607 (4th Cir. 1999)). Once a plaintiff makes a prima facie showing, the burden shifts to the employer to articulate a "legitimate, nondiscriminatory reason for the adverse employment action." *Hill*, 354 F.3d at 285. If the employer is able to do so, the burden shifts back to the plaintiff to show by a preponderance of the evidence that the employer's proffered reasons were merely a pretext for illegal discrimination. *Id.*

Crawley is an African-American and thus a member of the class protected by Title VII and 42 U.S.C. § 1981. Crawley inarguably suffered an adverse employment action when Norfolk Southern demoted him from his position as Virginia Division Supervisor in October of 2005. Additionally, following Crawley's demotion, Norfolk Southern did not eliminate or alter the Virginia Division Supervisor position. Norfolk Southern replaced Crawley with Carl Wilson, a white man. Thus, elements one, two, and four are satisfied. Element three requires Crawley to show that he had been performing his job up to Norfolk Southern's standards. While Norfolk Southern was undoubtedly pleased with Crawley's performance until the Bannister incident in 2005, Norfolk Southern concluded that Crawley's performance in handling that incident was seriously deficient. Crawley does not challenge the fact that Norfolk Southern concluded that he had mishandled the Bannister incident. Crawley does however argue that Norfolk Southern's conclusion was erroneous and that it conducted a flawed investigation to reach that conclusion.

Crawley has provided some evidence that his actions in handling the Bannister incident neither violated pertinent federal law nor ran afoul of Norfolk Southern's internal regulations, and thus his job performance was objectively adequate. Norfolk Southern never upgraded Bannister's situation from "sick" to "injured" or reported it to the FRA. The FRA never conducted an investigation or levied any punishment. In his deposition, Manion himself conceded that Crawley did not violate federal law. Norfolk Southern though disagrees with Crawley's assertion that he handled the Bannister incident appropriately. Rule 56 requires that the Court view the facts in the light most favorable to Crawley in determining whether he has established a prima facie case. On these facts, Crawley has met his burden of going forward and the Court must evaluate whether Norfolk Southern has rebutted the presumption of discrimination with evidence that it demoted Crawley without regard to his race. *Id.* at 285.

Norfolk Southern argues that Crawley's handling of the Bannister incident evinced an abrogation of his responsibilities as a supervisor. Further, Norfolk Southern concluded that Crawley lied to investigators. As a result, Norfolk Southern lost confidence in Crawley's ability to hold such a prominent and important position. Norfolk Southern maintains that Crawley violated both federal law and Norfolk Southern procedures during and after the Bannister incident, and that these reasons prompted Norfolk Southern's decision to demote Crawley, not his race.

In further defense of their decision to demote Crawley, Norfolk Southern has pointed to several incidents where similarly situation white employees were punished equally or more severely than Crawley for similar conduct. Courts in this circuit have repeatedly held that in the absence of other evidence of unlawful discrimination, a plaintiff must demonstrate that the prohibited conduct for which he was disciplined was comparable in seriousness to misconduct committed by an employee of another race and that the comparable employee's discipline was less severe than the plaintiff's.[1] *Lightner v. City of Wilmington*, 545 F.3d 260, 264–65 (4th Cir.

---

[1] In Crawley's deposition, when asked to identify the facts upon which he bases his allegation that he was demoted because he was black, Crawley responded, "It's my opinion." He based this opinion on the fact that (1) he was the only black Division Superintendent at the time; (2) he had performed well during the previous year; (3) he had never seen a Norfolk Southern executive at Manion's level personally involved in an investigation; and (4) he had more years of service than all but one other Division Superintendent. *Pl.'s Summary of Undisputed Facts*, ECF. No. 30-1, at ¶ 101.

Crawley also contends that Manion's investigation was flawed and contradictory, and that Norfolk Southern's reliance on the investigation in demoting Crawley is "unworthy of credence." *Pl.'s Resp.*, ECF. No. 33, at 16 (quoting *EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 854 (4th Cir. 2001). However, courts must be careful not to sit as "'super-personnel' department[s] weighing the prudence of employment decisions made by defendants." *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 272 (4th Cir. 2005) (quoting *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)). Rather, an employer "measuring the seriousness of employee misconduct . . . is free to develop its own criteria for employment decisions, so long as they are not race-based. *Marroquin v. Exxon Mobil Corp.*, No. 08-391, 2009 WL 1529455, at *7 (E.D. Va. May 27, 2009). It is not for a jury to decide whether Norfolk

2008); *Taylor v. Va. Union Univ.*, 193 F.3d 219, 234 (4th Cir. 1999) (en banc) (citing *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993)); *Hoyle v. Freightliner, LLC*, No. 09–2024, 2011 WL 1206658, at *4 (4th Cir. Apr. 1, 2011); *see Purchase v. Astrue*, No. 08-1443, 2009 WL 1133320, at *2–3 (4th Cir. Apr. 28, 2009); *Prince-Garrison v. Md. Dep't of Health & Mental Hygiene*, No. 08-1090, 2009 WL 667421, at *2 (4th Cir. Mar. 13, 2009); *Cupples v. AmSAN, LLC*, No. 07-1403, 2008 WL 2369174, at *4 (4th Cir. June 10, 2008). When a plaintiff alleges that he was punished more severely than he should have been because he is black, but cannot demonstrate that a white employee was punished less severely for comparable conduct, summary judgment is proper. *Lightner*, 545 F.3d at 265.

Norfolk Southern argues that it punished at least four similarly situated white comparators more severely than Crawley, thus demonstrating its lack of racial animus in demoting Crawley. On two occasions, Norfolk Southern dismissed white Division Superintendents for the same general offense that Norfolk Southern concluded Crawley had

---

Southern's decision to demote Crawley was wise, fair, or even correct. *See Lynn v. Alexander*, No. 07-2860, 2009 WL 4884504, at *3–4 (D. Md. Dec. 10, 2009). The only determination the jury is allowed to make is whether or not Norfolk Southern demoted Crawley because he is black.

Crawley argues that a few of Manion's notes on the investigation contradict some witness statements, an assertion that Crawley claims demonstrates that Manion's investigation was a sham and pretext for racial discrimination. Crawley even goes so far as to argue that a jury could deductively conclude, by a preponderance of the evidence, that Manion valued the testimony of white witnesses more than black witness in conducting his investigation. A jury cannot reasonably be called on to make that kind of inference without more solid evidence. If a jury sits in judgment of Norfolk Southern's investigation, its conclusions must be grounded in fact, not creative interpretation. From Crawley's description of Manion's investigation, a jury's finding of discriminatory intent would be, at best, conjecture.

Without any additional evidence indicating Norfolk Southern discriminated against Crawley on the basis of his race, these facts would not permit a reasonable jury to infer illegal discrimination. Thus, according to a long line of cases in this circuit, it is proper for this Court to require Crawley to produce some evidence that Norfolk Southern treated a similarly situated white employee differently so as to allow a reasonable factfinder to infer discrimination. *See Lightner*, 545 F.3d at 264–65. Without such a showing, no reasonable jury could find in Crawley's favor, and the Court must enter summary judgment.

committed. In 2008, Norfolk Southern dismissed Richard Keane for improperly handling injury incidents and for failing to acknowledge his responsibility for the violations. *Pl.'s Summary of Undisputed Material Facts*, ¶¶ 116, 128. In 2007, Norfolk Southern dismissed Division Superintendent Mike Wester for mishandling the reporting of employee personal injuries. *Id.* at ¶¶131–32. Also in 2007, Norfolk Southern demoted Carl Wilson from his grade B7 position of Superintendent Virginia Division—the same job Crawley held before his demotion—to the grade B5 position of Superintendent Detroit Terminal, an identical loss of rank to Crawley. In contrast to Crawley though, Norfolk Southern reduced Wilson's salary by $13,600 (ten percent), compared to Crawley's $5,200 (3.48%) pay cut. Moreover, Crawley's pay and benefits were grandfathered at the B6 level for three years while Wilson's were not, making Crawley eligible for higher bonuses and incentives than Wilson. Additionally, Norfolk Southern demoted General Manager Brig Burgess from his grade B8 position to a grade B7 Division Superintendent position on May 1, 2007 for mishandling employee injuries. While Norfolk Southern demoted Crawley's rank two levels, it demoted his pay one level, just like Burgess. But, Norfolk Southern cut Burgess' pay by $19,400 (ten percent), a much more severe monetary penalty than that imposed on Crawley.

By proffering the results of Manion's internal investigation and conclusion as non-discriminatory reasons for Crawley's demotion, and by demonstrating how several similarly situated white comparators were disciplined more severely than Crawley for similar offenses, Norfolk Southern has adequately rebutted any inference of racial discrimination. *Lightner*, 545 F.3d at 265. To survive summary judgment on his demotion-discrimination claim then, Crawley must produce evidence from which a reasonable jury could find that Norfolk Southern's defenses

are merely pretext for discrimination.[2] *Hill*, 354 F.3d at 285. In demonstrating pretext, Crawley cannot solely rely on evidence that Norfolk Southern treated some other white employees more leniently than Crawley. *See Cook*, 988 F.2d at 511–12 (holding that there is no inference of discrimination where white comparators were both treated better and worse than plaintiff); *see also Roberts v. Gen. Elec. Co.*, No. 92-2479, 1993 WL 303308, at *2 (4th Cir. June 9, 1993) (holding that severe treatment of white comparators precluded any inference of discrimination even when the employer treated another comparator more leniently).

To demonstrate pretext, Crawley argues that Manion's investigation was a sham because of its haste, intensity, and sloppiness. In effect, Crawley alleges that Manion conducted a witch-hunt to demote Crawley for being black. First, Crawley takes issue with Manion's conclusion that Crawley abdicated his responsibility to investigate the Bannister incident to determine the true reason Bannister had asked off work. Crawley argues, virtually without elaboration, that Manion's conclusion was incorrect. Second, Crawley argues that Manion's conclusion that Crawley's improper handling of the Bannister incident impugned Norfolk Southern's credibility with its employees. Again, without much detail, Crawley asserts that Manion's conclusion was simply incorrect. Third, Crawley states that Manion manipulated key facts to suggest that Bruce Cobbs tried to intimidate Bannister into changing the reasons for her asking off work, and that Crawley's trust in Cobbs was "ill placed." Crawley alleges that despite his official conclusion to the contrary, Manion knew *during the investigation* that Cobbs never told Bannister that "marking off work injured would open a can of worms." In all of these arguments, Crawley is

---

[2] In response, Crawley points to five similarly situated white comparators whom Norfolk Southern punished less severely.

essentially asking a jury to conclude, without any solid evidentiary support, that Manion manipulated his investigation and eventually got it wrong, *because* Crawley is black.

Fourth, Crawley questions Manion's conclusion that Crawley was not credible during the investigation, while Bannister was deemed candid and believable. Crawley insists that Manion's faith in Bannister and distrust of Crawley evinces discriminatory intent. Bannister, however, is herself African-American, and Manion's favoring of one black witness over another does not warrant an inference of racism. Crawley next argues that Manion's reaction to Crawley receiving a stronger performance review than a similarly situated white manager in 2005 demonstrates his racial animus toward Crawley. When Eastern Region General Manager Wayne Mason issued the reviews, Manion rebuked him, warning him that "relationships" might interfere with Mason's charge up the corporate ladder. Crawley urges that the alluded "relationships" included Mason's relationship with Crawley. However, Crawley has produced no other evidence to explain the meaning of Manion's statement about "relationships." In the absence of stronger evidence of Manion's intent, any inference about his intent would be pure guess-work.

Crawley also argues that Manion had a similar reaction to Crawley's stronger performance review in 2006, questioning the validity of the review. Manion interjected that he personally disagreed with the review's conclusion, stating that "[Crawley's] operating capabilities remain in question." It is clear from these instances that Manion indeed did hold reservations about Crawley's management ability, despite strong performance reviews. However, Crawley does not demonstrate *any* evidence about *why* Manion thought the way he did. For a reasonable jury to infer racial animus, Crawley must produce more. A manager's belief that a subordinate may need more time and training to advance within the company despite

some strong performance reviews cannot support a reasonable inference of racism without factual substantiation.

Details aside for the moment, Crawley's primary argument is that Manion's conclusion was just plain wrong, and the only reason for it being wrong is racism. While this Court cannot be called upon to determine the wisdom of Norfolk Southern's decision, Manion's conclusion that Crawley mishandled the Bannister incident might well have been incorrect. Or, on the other hand, the conclusion may have been proper. That issue is not pertinent. Even if Manion's conclusion was erroneous, a poor management decision does not have to be motivated by racism. It may be motivated by misinformation, personality conflicts, or simply poor management by the executives, but as long as it is not motivated by racial animus, the decision is not actionable under Title VII. While Crawley has produced evidence from which a jury could find that Norfolk Southern's decision was incorrect, the question of correctness is not for a jury. The only question for a jury is whether Norfolk Southern discriminated against Crawley *because* he is black. Crawley has not proffered evidence from which a reasonable jury could conclude that Norfolk Southern did. Summary judgment is thus appropriate on this issue.

### b. Promotion Discrimination Claims

Crawley next alleges that Norfolk Southern passed him over for "numerous upper management positions, including those in the B7, B8, and X3 pay grades" in favor of "less qualified white individuals." *Compl.* at 6. All of the positions which Crawley claims were denied to him because of his race were filled after his October 1, 2005 demotion. As with his first claim, Crawley has not produced any direct evidence of racial discrimination and must proceed under the *McDonnell-Douglas* burden-shifting framework. *White v. BFI Wast Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004).

To establish a prima facie case on a failure-to-promote claim, a plaintiff must show that (1) he is a member of a protected group; (2) there was a specific position for which he applied; (3) he was qualified for that position; and (4) he was rejected under circumstances permitting an inference of discrimination. *Williams v. Giant Food Inc.*, 370 F.3d 423, 430 (4th Cir. 2004). Contrary to Norfolk Southern's urging, a race discrimination plaintiff need not prove that he was better qualified than a successful applicant "if other circumstantial evidence suggests discrimination." *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 545 (4th Cir. 2003); *Dennis v. Columbia Colleton Med. Ctr.*, 290 F.3d 639, 648–49 n. 4. It is important to note, however, that courts may not sit as "'super-personnel' department[s] weighing the prudence of employment decisions made by defendants." *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 272 (4th Cir. 2005) (quoting *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)). Moreover, a plaintiff's "unsubstantiated allegations and bald assertions concerning [his] own qualifications and the shortcomings of [his] co-workers fail to disprove [the employer's] explanation or show discrimination." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996). Importantly, "it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *Id.* (internal quotations omitted). If no reasonable jury could find that race colored Norfolk Southern's perception that Crawley was relatively unqualified for the positions in question, summary judgment is proper.

It is not disputed that the first two elements of a prima facie case are satisfied.[3] The Court must therefore focus on whether there is evidence from which a reasonable jury could find

---

[3] A company's failure to post positions relieves the plaintiff of the burden of showing that he applied for a specific position. *Williams*, 370 F.3d at 431. It is Norfolk Southern's practice not to post openings for the high-level positions of which Crawley complains. Instead, it is Norfolk Southern's practice to "tap the shoulder" of a person selected for promotion rather than formally interviewing specific candidates. Ostensibly, this is because any candidate for upper

that Crawley was qualified for the positions that he did not get, and that Norfolk Southern's actions could permit a reasonable jury to infer it discriminated against Crawley. Crawley asserts that objective evidence establishes that he was qualified for any number of positions to which Norfolk Southern did not promote him. Crawley points to his history of performance at the Division Superintendent level, marked by strong performance evaluations, and his "record-setting" performance as a Terminal Superintendent. From the Court's reading of the briefs, it appears that Norfolk Southern stops short of arguing that Crawley was patently "unqualified" for the positions in question; rather, Norfolk Southern presents evidence that he was not the *most qualified* candidate for the positions. While this may indeed be the case, Crawley has presented enough evidence of Crawley's strength as a candidate that a reasonable jury could find that he was qualified for the positions at issue. Accordingly, Crawley has satisfied the first three elements of a prima facie case of promotion-discrimination under Title VII.

To satisfy the fourth element, Crawley points to several specific positions to which he would have been promoted but for Norfolk Southern's discrimination. In each instance, Crawley does not argue that Norfolk Southern took race *directly* into account during the promotion process. Instead, Crawley argues that Norfolk Southern *indirectly* discriminated: if Norfolk Southern had not illegally demoted Crawley because he was black, his record would not have been marred by disciplinary action, and his demotion-free resume would have entitled him to promotion. In this way, Crawley bootstraps his promotion-discrimination charge to his *demotion*-discrimination charge. Norfolk Southern urges that this bootstrapping is improper; however, Fourth Circuit precedent supports a finding that if Norfolk Southern demoted Crawley

---

management has been in the company long enough that his or her abilities and qualifications are well-known. Because of Norfolk Southern's promotion procedures, the Court will consider Crawley to have satisfied the second element of his prima facie case.

for discriminatory reasons, and then used the demotion to hamstring Crawley's promotion opportunities, the original demotion-discrimination taints the promotion decision. *Williams*, 370 F.3d at 433. While the Fourth Circuit pronounced this rule in dicta, Norfolk Southern cannot reasonably argue that its failure to promote Crawley was non-discriminatory if the entire reason it did not promote Crawley was because a discriminatory demotion had tainted his resume. Accordingly, the Court cannot consider Crawley's promotion discrimination claim without first referencing the previous demotion that derailed his career path.

But, the Court held above that Norfolk Southern is entitled to summary judgment on the demotion-discrimination claim because no reasonable jury could find liability. If Crawley had been able to demonstrate triable issues of fact regarding whether his demotion was illegal, the Court might be obliged to send this issue to a jury as well. However, because no reasonably jury could find that Crawley's demotion was the product of racial discrimination, the Court must evaluate Crawley's qualification for promotion just as Norfolk Southern did when it made its promotion decisions. That is to say, the Court cannot ignore the fact that Crawley had been demoted for disciplinary reasons because that is how Norfolk Southern viewed Crawley's qualifications at the time. *Evans*, 80 F.3d at 960; *O'Conner v. Consol. Coin Caterers Corp.*, 56 F.3d 542, 547 (4th Cir. 1995).

To satisfy the fourth element of his demotion-discrimination claim, Crawley can show either that his qualifications were objectively superior to the successful applicant's, or that Norfolk Southern's proffered reasons for passing him over were pretext for discrimination. *See Dennis*, 290 F.3d at 648 n. 4. To show pretext, Crawley relies on the same evidence as in his demotion-discrimination claim. *Pl.'s Resp. to Def.'s Mot. for Summ. J.*, at 45. As explained above, this evidence would not permit a reasonable jury to infer discrimination. Therefore, for

Crawley to satisfy the fourth element and establish a prima facie case, he must demonstrate that his qualifications "were so plainly superior that the employer could not have preferred another candidate." *Dennis*, 290 F.3d at 648 n. 4. In determining whether Norfolk Southern denied Crawley promotions under circumstances permitting an inference of discrimination, the Court must compare Crawley's resume, including his 2005 disciplinary demotion, to the qualifications of the successful applicants for the positions in question.

Crawley claims that he was denied promotion to literally dozens of jobs after his 2005 demotion. Notably though, none of the successful candidates for these positions had been demoted for disciplinary reasons as had been Crawley. Moreover, there is no evidence, and Crawley does not claim, that the successful candidates were unqualified for the positions to which they were promoted. Nowhere does Crawley allege or demonstrate that he was passed over for promotion in favor of an objectively unqualified candidate. Crawley argues that he was more qualified than several applicants whom Norfolk Southern promoted, but Norfolk Southern has offered copious objective evidence explaining non-discriminatory reasons why those people were promoted instead of Crawley.

In most cases, the main strike against Crawley was his disciplinary demotion, whereas the promoted candidates had not been demoted or previously disciplined. Moreover, even if Crawley had not been demoted, his resume, while strong, would not have been so overwhelming to compel Norfolk Southern to promote him.[4] A jury's inference that, in the absence of Crawley's demotion, Norfolk Southern would have promoted him would be guesswork given the qualifications of the employees who were actually promoted. Even if Crawley has satisfied his

_____

[4] Crawley has alleged that Norfolk Southern illegally denied him promotion to dozens of positions. The Court has reviewed all of the positions of which Crawley complains in detail, but the Court will not analyze Crawley's claims position-by-position in this Memorandum Opinion, duplicating the parties' hundreds of pages of briefs and exhibits.

burden of going forward, he has not presented evidence sufficient to rebut Norfolk Southern's proffered reasons for not promoting him. A reasonable jury could not find that Norfolk Southern did not promote Crawley because he was black. Summary judgment is thus proper on this claim.

### c. Salary Discrimination Claims

Crawley further alleges that Norfolk Southern paid him less than it would have if he were white. Crawley alleges compensation discrimination related to Norfolk Southern's salary determinations from 2003 through 2010. Again, Crawley has no direct evidence of discrimination and must employ the *McDonnell Douglas* burden-shifting framework to prosecute his claims. *White*, 375 F.3d at 295.

To establish a prima facie case of compensation discrimination, Crawley must show (1) that he was a member of a protected class; (2) that his job performance was satisfactory; (3) that he suffered an adverse compensation action; and (4) that similarly situated white employees received more favorable compensation treatment.[5] *Id.* Once Crawley makes out a prima facie case, the burden shifts to Norfolk Southern to "articulate a legitimate, nondiscriminatory reason for the adverse [compensation]." *Lettieri v. Equant, Inc.*, 478 F.3d 640, 646–47 (4th Cir. 2007). If Norfolk Southern does this, the burden returns to Crawley to show that Norfolk Southern's proffered reasons were not its true reasons, but were merely a pretext for discrimination. *Id.*

---

[5] Crawley contends that, as in a promotion-discrimination case, a compensation-discrimination plaintiff need not point to similarly-situated white comparators to sustain his claim, despite the Fourth Circuit's clear statement to the contrary in *White*. To support his position, Crawley cites *Bryant*. The *Bryant* court held that when other circumstantial evidence is present, a *promotion-discrimination* plaintiff is not required to prove that he was more qualified than a similarly-situated white applicant. *Bryant*, 333 F.3d at 545.

However, nothing in the *Bryant* opinion obviates the need for a white comparator in a compensation-discrimination case. *White*, which post-dates *Bryant*, unequivocally states that a compensation-discrimination plaintiff must show that he received less favorable compensation than a white comparator. *White*, 375 F.3d at 295. This Court will therefore hold Crawley to all four elements of compensation-discrimination the Fourth Circuit articulated in *White*.

Neither party disputes that Crawley is in a protected class and that he suffered an adverse compensation action. The issues before the Court are therefore whether Crawley's job performance was satisfactory to receive higher pay, and whether Norfolk Southern paid Crawley less than similarly situated white employees. If either Crawley's job performance was unsatisfactory or Norfolk Southern treated Crawley no worse than his white comparators, summary judgment is appropriate. *White*, 375 F.3d at 295. Furthermore, even if Crawley establishes a prima facie case, but Norfolk Southern rebuts the presumption of discrimination, summary judgment is still appropriate if Crawley is unable to demonstrate pretext. *Lettieri*, 478 F.3d at 646–47.

### i. Transfer Increase in 2003

Crawley contends that Norfolk Southern discriminated against him when it transferred him from Superintendent Alabama Division to Superintendent Virginia Division without granting him a transfer bonus. Crawley argues that the most appropriate white comparator is Jeffrey Slinger, who was transferred in 2007 with a bonus. Norfolk Southern counters that S.A. Murry, a Division Superintendent whom Norfolk Southern transferred *the same day* as Crawley to replace Crawley as Superintendent Alabama Division, is a more appropriate white comparator. Like Crawley, Murry received no transfer bonus.

Crawley can demonstrate that other white Division Superintendents were transferred with transfer bonuses, but this evidence is not dispositive. Such "mixed" evidence does not permit an inference of discrimination. *See, e.g., Cook*, 988 F.2d at 512. Moreover, Norfolk Southern transferred four other white superintendents in 2003 without transfer bonuses. The only permissible inference that a jury could draw from this evidence is that Norfolk Southern did not consistently award or deny transfer bonuses to Division Superintendents during lateral transfers

regardless of whether they were white or black. Because no reasonable jury could find that Norfolk Southern's decision not to award Crawley a transfer bonus in 2003 was racially motivated, summary judgment is proper.

### ii. Merit Increases from 2005 to 2010

Crawley alleges that in 2005, Norfolk Southern discriminated against him by awarding him a 4.02% raise, an additional $5,200 per year. In contrast, similarly situated Michael Wheeler received a five percent raise, or an additional $5,800 per year. After their raises, Crawley made $134,700 per year and Wheeler made $121,700. Seven white Division Superintendents received higher raises than Crawley, while Crawley received higher raises than three white Division Superintendents. Additionally, after his merit increase in 2005, Crawley made less than six white Division Superintendents, but more than four others. All told, in 2005, Crawley's total compensation and salary increase was in the middle of Norfolk Southern's Division Superintendent pack.

The Fourth Circuit has explained that "isolated incidents or random comparisons demonstrating disparities in treatment may be insufficient to draw a *prima facie* inference of discrimination without additional evidence that the alleged phenomenon of inequality also exists with respect to the *entire relevant group of employees*." *Strag v. Bd. Of Trs.*, 55 F.3d 943, 948 (4th Cir. 1995) (quoting *Houck v. Virginia Polytechnic Inst.*, 10 F.3d 204, 206 (4th Cir. 1993)). The fact that Crawley was situated squarely in the middle of the Division Superintendent salary and pay raise range would not permit a reasonable jury to infer that Norfolk Southern discriminated against Crawley because he was black. Norfolk Southern paid Crawley more than some whites, and gave him a bigger pay increase than some whites in similar jobs. This mixed

evidence does not support Crawley's prima facie case, and Norfolk Southern is entitled to summary judgment.

Crawley further alleges that Norfolk Southern discriminated against him because his merit pay increases in 2006, 2007, 2008, and 2010 were smaller than they would have been if he were white. In 2006, Crawley received a 4.02% increase ($5800), which was virtually identical to the raises of six white Terminal Superintendents and higher than four other white Terminal Superintendents. In 2007, Crawley received a four percent increase, which was virtually identical to the raises of eleven white Terminal Superintendents and higher than two other white Terminal Superintendents. Additionally, two African-American Terminal Superintendents received higher percentage increases than both Crawley and most of the white Superintendents. In 2008, Crawley received a 1.22% increase and an additional lump sum payment. Norfolk Southern only increased his salary by 1.22% because of the mandatory cap on level B6 pay. In 2010, Crawley received a 1.22% increase, which again raised his salary to the new level B6 hard cap. In 2006 and 2007, just as in 2005, Norfolk Southern gave Crawley bigger pay increases than some whites in similar jobs. Norfolk Southern also gave other African-Americans larger pay increases than Crawley and many whites. After 2007, Norfolk Southern paid Crawley the absolute maximum that it could pay him under their objective pay scales. None of these facts would allow a reasonable jury to infer that Norfolk Southern gave Crawley smaller raises than it would have if he were white. Accordingly, Norfolk Southern is entitled to summary judgment.

### d. Retaliation Claim

Lastly, Crawley alleges that Norfolk Southern retaliated against him for filing a Charge of Discrimination with the EEOC in 2006. Crawley argues that Norfolk Southern passed him over for promotion to ten different jobs in the six months following Crawley's EEOC complaint.

To state a prima facie case of retaliation, a plaintiff must show (1) that he engaged in a protected activity; (2) the employer acted adversely against him; and (3) the adverse action was causally connected to the protected activity. *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007). Filing an EEOC complaint is patently protected activity. Additionally, "[i]t has long been clear that failure to promote an employee constitutes an adverse employment action for the purposes of § 2000e-3." *Bryant*, 333 F.3d at 544. Furthermore, a prima facie inference of retaliation arises when a plaintiff shows that an adverse employment action occurred shortly after the plaintiff filed his EEOC complaint. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001); *King v. Rumsfeld*, 328 F.3d 145, 151 n. 5 (4th Cir. 2003); *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989); *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994). Crawley points out that Norfolk Southern passed him over for ten specific promotions within six months of his filing an EEOC complaint. Because Crawley participated in a protected activity by filing an EEOC charge, and Norfolk Southern denied him numerous promotions in close temporal proximity to his charge, Crawley has established a prima facie case of retaliation.

However, under the *McDonnell Douglas* framework, once a plaintiff has made a prima facie showing, an employer may rebut the inference by offering a non-retaliatory explanation for its actions. When the employer offers such evidence, the burden shifts back to the plaintiff to demonstrate that the employer's proffered reason is merely pretext for unlawful retaliation. *King*, 328 F.3d at 151; *Hoyle v. Freightliner, LLC*, No. 09–2024, 2011 WL 1206658, at *11 (4th Cir. 2011). If the plaintiff cannot offer evidence that the employer's explanation is pretext for retaliation, summary judgment is proper.

As described above, Norfolk Southern has explained that Crawley was passed over for promotion in favor of well-qualified candidates who did not have the stain of a disciplinary

demotion on their record. In response, Crawley has adduced no evidence that the selected candidates were unqualified or that their resumes were demonstrably less impressive than Crawley's. Crawley argues that Norfolk Southern cannot justify their decision not to promote Crawley with the fact that his record was marred with a racially discriminatory demotion. However, the Court has ruled above that Norfolk Southern is entitled to summary judgment on Crawley's demotion-discrimination claim. Crawley also alleges that Norfolk Southern retaliated against him by giving him smaller bonuses and merit pay increases in the wake of his EEOC complaint. Once again though, the Court has ruled that Norfolk Southern is entitled to summary judgment on Crawley's compensation-discrimination claim. Because Crawley cannot demonstrate that Norfolk Southern's proffered reasons for passing Crawley over for promotions or compensating him as it did were pretext for discrimination, summary judgment must be entered in Crawley's retaliation claim.

## V.    Conclusion

Crawley has not demonstrated evidence from which a reasonable factfinder could find that Norfolk Southern discriminated against him. Accordingly, Norfolk Southern's motion for summary judgment will be **GRANTED**. An appropriate order shall issue this day.


ENTER: This 20th day of June, 2011.


James C. Turk
Senior United States District Judge

23